Peter W. HIRSCH, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

SYSTEM COUNCIL U-2, IBEW, AFL-CIO and International Brotherhood of Electrical Workers, Local 1576, Respondents.

Civ. A. No. 82-1418.

United States District Court,
D. New Jersey.

May 7, 1982.

Joseph C. Kelly, N. L. R. B., Region Four, Philadelphia, Pa., for petitioner.

Vincent J. Apruzzese, Apruzzese & McDermott, A Professional Corp., Springfield, N. J., for charging party Public Service Electric and Gas Co.

Thomas J. Grooms, Bond, Schoeneck & King, Syracuse, N. Y., for charging party Bechtel Power Corp.

J. Sheldon Cohen, Paul A. Montalbano, Schneider, Cohen, Solomon & DiMarzio, Jersey City, N. J., for respondent System Council U–2.

Jan M. Schlesinger, Hartman, Schlesinger, Schlosser & Faxon, Mount Holly, N. J., for respondent Local 1576, IBEW.

## FINDINGS OF FACT

## and

## CONCLUSIONS OF LAW

BROTMAN, District Judge.

This cause came on to be heard upon the verified Petition of Peter W. Hirsch, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(*l*); herein called the Act), pending the final disposition of the matters involved herein pending before the Board on charges alleging that System Council U–2, IBEW, AFL–CIO and International Brotherhood of Electrical Workers, Local 1576 (herein called Respondents), have engaged in, and are engaging in, acts and conduct in violation of Section 8(b)(4), subparagraph (B), of the Act, pending the final disposition of the matters involved before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said Petition. A hearing on the issues raised by the Petition and the Answers was duly held on May 6, 1982. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The court has fully considered the pleadings, evidence, arguments and briefs of counsel. Upon the entire record, the court makes the following:

## FINDINGS OF FACT

There is, and Petitioner has reasonable cause to believe that:

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and files this Petition for and on behalf of the Board.

2. Jurisdiction of this court is invoked pursuant to Section 10(*l*) of the Act.

3. (a) On or about May 3, 1982, Bechtel Power Corporation (herein called Bechtel), pursuant to the provisions of the Act, filed

a charge with the Board alleging that Respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b)(4), subparagraph (B), of the Act,

(b) On or about May 3, 1982, Public Service Electric & Gas Company (herein called Public Service), pursuant to the provisions of the Act, filed a charge with the Board alleging that Respondent System Council U–2, IBEW, AFL–CIO, (herein called System Council), has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4), subparagraph (B), of the Act.

4. The aforesaid charges were referred to Petitioner as Regional Director of the Fourth Region of the Board.

5. Respondents are each labor organizations and System Council is an agent of a labor organization within the meaning of Section 2(5), 8(b) and 10(1) of the Act, and at all times herein have acted in concert for the purpose of organizing and implementing the picketing described herein.

6. Respondents, unincorporated associations, are each organizations in which employees participate, and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, wages, rates of pay, hours of employment or conditions of work.

7. Respondent Local 1576 has its principal office at 97 David Drive, Mullica Hill, New Jersey. Respondent System Council U–2 has its principal office at 60 Park Place, Newark, New Jersey. At all times material herein, Respondents have been engaged within this judicial district in transacting business and in promoting and protecting the interests of their employee-members.

8. At all times material herein, Charles Wolfe has been President of System Council and an agent of Respondents within the meaning of Section 8(b) and 10(1) of the Act.

9. Bechtel, a Nevada corporation, is engaged in the business of constructing nuclear power plants. During the past year,

Bechtel performed services valued in excess of $50,000 outside the State of Nevada.

10. Public Service, a New Jersey corporation, is engaged in the business of providing utilities to the general public. During the past year, Public Service received in excess of $50,000 for services performed and purchased goods and supplies valued in excess of $50,000 from firms located outside the State of New Jersey.

11. At all times material herein, Public Service has engaged Bechtel and James P. Horan, Inc. (herein called Horan), as prime contractors to construct a nuclear power generating station at the Hope Creek Power Generating Station (herein called the Hope Creek Project).

12. On April 30, 1982, the collective bargaining agreement between Public Service and Respondents covering the operation of the Salem Nuclear Generating Station terminated by its terms, as a result of which the parties are presently involved in negotiations on a new contract.

13. The Hope Creek Project is located on the same lands as the Salem Nuclear Generating Station (herein called Generating Station), but in a location reached by a separate roadway and at a different location than the Generating Station.

14. The construction work performed at the Hope Creek Project does not affect or curtail the operation of the Generating Station, as the two facilities are separate and distinct.

15. On April 30, 1982, Public Service, in anticipation of strike action by Respondents, established a reserve gate system, to avoid enmeshing neutral employers, Bechtel and Horan, in the dispute which arose between Respondents and Public Service. The reserve gate for Bechtel and Horan is identified at point 5 on Exhibit P–1 and the reserve gate for the Generating Station at point 8 on said Exhibit. Appropriate signs designating these reserve gates are depicted in various photographs, Exhibits P–3, P–4, P–5, P–6, P–7, and include the language:

a. For Hope Creek construction contractors, subcontractors, their employees and suppliers.

b. For the Generating Station, its employees, suppliers and service contractors.

At a point approximately one mile from the Generating Station, Point 2 on Exhibit P–1, there is a fork in the road. The right fork leads to the Hope Creek Project site and the left fork leads to the Generating Station. It is at this point that Public Service has designated the reserve gate for the Hope Creek Project on the right fork, and the reserve gate for the Generating Station on the left fork, Exhibits P–5 and P–6.

16. Public Service by letter dated April 30, 1982, (P–8) advised Respondents of the reserve gate arrangement, in event picketing were to occur, serving same as follows:

(1) By personal service on Charles Wolfe, President of System Council U–2 on May 1, 1982.

(2) The President of Local 1576, John Gerrity, denies having been served with or having seen such letter (P–8) prior to having been shown it on the witness stand on May 6, 1982. However, the court is satisfied that he had knowledge of the reserve gate arrangement during the course of the picketing, by virtue of his attendance at the picketing site and Exhibits 1 and 2 attached to the complaint. The court also believes that the Respondent would know of the reserve gate arrangement as a result of Charles Wolfe's knowledge thereof, and his activities in strike arrangements.

17. On May 1, 1982, (and continuing to date) Respondents commenced picketing at a point on the Alloway Creek Neck Road designated as Point 7 on Exhibit P–1, which road proceeds in a southerly direction to connect with an access road (owned by the United States and the State of New Jersey over which Public Service has an easement). This road is under the jurisdiction of Lower Alloway Creek Township.

a. The picketing site is over 3½ miles from the Generating Station and on the road over which some 4700 Bechtel employees and some 30 to 40 Horan employees must travel daily to reach the Hope Creek Project. This is the same road that leads to the Generating Station.

b. Initially on May 1, and May 2, 1982, there were 5 to 10 pickets carrying signs with approximately 10 to 15 additional people congregating on the side of the road. The working on their signs contained language that "All IBEW Locals Strike AFL–CIO." No mention was made of Public Service on the signs.

c. On May 3, and May 4, 1982, there were approximately 10 to 15 pickets with signs and several hundred cars and many hundreds of people on the road backed up approximately two to three miles. The wording on the signs had been changed to read "All IBEW Locals on strike at P.S.E. & G."

18. Prior to the date picketing commenced, Bechtel had 4700 employees working daily on the Hope Creek Project. Immediately after picketing commenced, the following number of employees reported for work:

May 3, 1982 – Four

May 4, 1982 – One Hundred

May 5, 1982 – One Hundred Fifty

May 6, 1982 – One Hundred Fifty

a. As a consequence of this reduction in employees, there has been a complete cessation of construction activities at the Hope Creek Project.

19. Prior to the date picketing commenced, Horan had 30 to 40 employees working daily on the Hope Creek Project. Since immediately after picketing commenced, none of the employees have reported for work.

20. There is no dispute existing between Bechtel and Respondents nor between Horan and Respondents, nor are Bechtel and Horan employees represented by Respondents.

21. Since on or about May 1, 1982, Respondents have been engaged in picketing at the Hope Creek Project and have induced and encouraged individuals employed by Bechtel, Horan, their subcontractors and other persons to refuse to work or perform services at the Hope Creek Project.

22. An insubstantial number of persons who have no business at the construction site and Generating Station pass by and observe the current site of the picketing. These persons would not observe the site proposed by Public Service. The small number of persons who fit this description lead the court to find that the Respondents' choice of the current site is not motivated by a desire to inform the public of the existence of the labor dispute, but rather to disrupt the construction of the Hope Creek Project.

23. Respondents have engaged in, and have induced and encouraged individuals employed by Bechtel, Horan, their subcontractors and other persons engaged in commerce or in an industry affecting commerce, to engage in a strike or refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on goods, articles, materials or commodities or to perform services, and have threatened, coerced and restrained Bechtel, Horan, their subcontractors and other persons engaged in commerce or in an industry affecting commerce.

24. An object of the acts and conduct of Respondents was, and is: (1) to force or require subcontractors of Bechtel and Horan and other persons to cease using, selling, handling, transporting or otherwise dealing in the products of Bechtel and Horan and to cease doing business with Bechtel and Horan; and, (2) to force or require Bechtel, Horan and other persons to cease using, selling, handling, transporting or otherwise dealing in the products of Public Service and to cease doing business with Public Service.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter of this proceeding, being empowered to grant injunctive relief by Section 10(*l*) of the National Labor Relations Act (herein called the Act).

2. Both Public Service Electric & Gas Co. and the Bechtel Corp. are employers engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

3. Respondents are labor organizations within the meaning of Section 2(5) of the Act.

4. The Respondents are acting in concert for the purpose of organizing and arranging the picketing complained of.

5. *The court's role in reviewing a petition for injunctive relief under Section 10(l) of the Act is a limited one. We are not called upon to decide the merits of the unfair labor practice case, or whether in fact violations have occurred. See Schauffler v. Local 1291, International Longshoremen's Association, 292 F.2d 182, 186 n.4 (3rd Cir. 1961). The determination of such questions, both as to factual and legal issues, is reserved exclusively for the NLRB, subject to review by the Court of Appeals pursuant to Sections 10(e) and (f) of the Act. NLRB v. Denver Building & Const. Trades Council, 341 U.S. 675, 681–83, 71 S.Ct. 943, 947–48, 95 L.Ed. 1284 (1951). The court's duty is limited to making a determination whether there is reasonable cause to believe that the charged violation of the Act has occurred, and that the NLRB's view of the law related to the charge is substantial and not frivolous. Hirsch v. Building and Construction Trades Council, 530 F.2d 298, 302–03 (3rd Cir. 1976); Samoff v. Bldg. & Const. Trades Council, 475 F.2d 203, 207 (3rd Cir. 1973); Schauffler v. Local 1291, Int'l. Longshoremen's Association, 292 F.2d 182, 187, 189 (3rd Cir. 1961).*

6. Respondent has argued that it should be permitted to picket aside the public roadway because its object in picketing there is to inform the public of its dispute with Public Service Elec. & Gas. It has been held that a union's interest in publicizing its disputes with employers by picketing, even when that interest is protected by statute, 29 U.S.C. § 158(b)(7)(C), does not entitle a union to exert economic pressure in an illegal manner or for an illegal purpose. *Hirsch v. Building & Construction Trades Council, supra,* 530 F.2d at 304. The inability to reach the public as the result of a lawful limitation on picketing activities has been held to be too insubstantial a

factor to outweigh the need to prevent unlawful picketing. *N.L.R.B. v. Int. Brotherhood of Elec. Workers, AFL–CIO, Local 903* ("Hinton Commercial Contractors"), 574 F.2d 1302 (5th Cir. 1978). Therefore, it is reasonable and not frivolous to proceed on the assumption that the respondent's asserted desire to inform the public of its dispute from the site where it wishes to conduct picketing is insufficient to prevent an otherwise proper injunction from being issued.

■ 7. The section of the National Labor Relations Act under which the Respondent is charged proscribes actions of which *"an object"* is impermissible. 29 U.S.C. § 158(b)(4)(i). If there are permissible objects of the actions complained of mixed with impermissible objects, then the actions may still be subject to an injunction. *E.g., Brown Transport Corp. v. N. L. R. B.*, 334 F.2d 30, 36 (5th Cir. 1964). Therefore, the Respondents' argument that their actions must be permitted because of the presence of permissible objects is unavailing.

■ 8. The fact that virtually all of the employees of Bechtel Corp. have failed to appear for their scheduled work since the inception of the picketing is enough to provide reasonable cause to believe that this result is intended by those who have arranged the picketing. *Hirsch v. Building and Construction Trades Council*, 530 F.2d 298, 305 (3rd Cir. 1976). The court does conclude that there is reasonable cause to believe that a purpose of the Respondents' activities which the Petitioner seeks here to enjoin is to force or require any person to cease using, selling, handling, transporting, or otherwise dealing in the products of an "other producer, processor, or manufacturer," or to cease doing business with some "other person,"—namely Bechtel Corp.— within the meaning of 29 U.S.C. § 158(b)(4)(i)(B).

■ 9. In *N. L. R. B. v. Int. Brotherhood of Elec. Workers, AFL–CIO, Local Union No. 903, supra*, 574 F.2d 1302, it was held that the Respondent's failure to limit picketing to a reserve gate established by a neutral party for the use of employees of and suppliers of the party actually engaged in a labor dispute should be enjoined. There the gate was on property accessible to the public, but was controlled by the neutral property. *Id.*, at 1303. Failure to confine the picketing to that reserve gate was indicative of the impermissible purpose of enmeshing the neutral party into the labor dispute. *Id.*, at 1304–05.

The Respondents have argued that the Hinton case is distinguishable from the one at hand because there the reserve gate was controlled by the neutral party, as was the property to which the neutral party sought to confine the picketing. In our own case, the reserve gate and the property are controlled by the employer which is actually a party to the dispute. The court is unable to see why the distinction is of any legal significance to this case, and concludes that it is reasonable and not frivolous to disregard the distinction. The fact of the matter is that the alternative site proposed by Public Service (Point 8, Exhibit P–1) is available to Respondents; nothing has been presented to show that there will be any substantial interference with lawful picketing at the proposed reserve gate; there is nothing unreasonable in the choice of that site. *N. L. R. B. v. Int. Brotherhood of Elec. Workers, AFL–CIO, Local Union 903, supra*, 574 F.2d at 1304. Picketing at the reserve gate will more acceptably balance the right of Bechtel Corp. and Horan, as neutral parties, to avoid being enmeshed in the dispute with the countervailing right of the Respondents to engage in lawful picketing. This accommodation of interests is required by *In re Sailors Union of the Pacific (AFL) and Moore Dry Dock Co.*, 92 NLRB 547, 27 LRRM 1108 (1950). *N. L. R. B. v. Int. Brotherhood of Elec. Workers, AFL–CIO, Local Union 903, supra.*

■ 10. Petitioner has reasonable cause to believe that Respondents have committed the violations charged by Petitioner. The evidence demonstrates that Petitioner's legal theory is substantial and not frivolous. It may be fairly anticipated that, unless enjoined, Respondents will continue or re-

peat the acts and conduct set forth, or similar or like acts and conduct, in violation of Section 8(b)(4), subparagraph (B), of the Act. It is therefore essential, appropriate, just and proper, for the purpose of effectuating the policies of the Act, and in accordance with the provisions of Section 10(*l*) thereof, that, pending the final disposition of the matters involved herein pending before the Board, Respondents be enjoined and restrained from the commission of the acts and conduct above alleged, similar acts and conduct, or repetitions thereof, provided however, Respondents may picket at the reserve gate of Public Service designated as Point 8 on Exhibit P–1, pending final disposition by the Board.

### ORDER GRANTING TEMPORARY INJUNCTION

This matter having been heard on May 6, 1982 upon the verified petition of Peter W. Hirsch, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said Petition; and

The court, upon consideration of the pleadings, testimony, evidence, argument of counsel, and the entire record in the case, having this date made and filed its Findings of Fact and Conclusions of Law finding and concluding that there is reasonable cause to believe that Respondents have engaged in, and are engaging in, acts and conduct in violation of Section 8(b)(4)(B) of said Act, affecting commerce within the meaning of Section 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined;

It is on this 7th day of May, 1982:

ORDERED, ADJUDGED, AND DE-CREED that, pending the final disposition of the matters involved pending before the National Labor Relations Board, Respondents, System Council U–2, IBEW, AFL–CIO and International Brotherhood of Electrical Workers, Local 1576, their officers, representatives, agents, servants, employees, attorneys, and all members acting in concert or participation with it or them, be, and they hereby are, enjoined and restrained from:

(a) Continuing their current picketing of Bechtel Power Corporation, James P. Horan, Inc. and their subcontractors at the Hope Creek Power Generating Station of Public Service Electric & Gas Company.

(b) In any manner or by any means, including picketing, orders, directions, instructions, requests or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by Bechtel Power Corporation, James P. Horan, Inc., their subcontractors or by any other person engaged in commerce or in an industry affecting commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Bechtel Power Corporation, James P. Horan, Inc., their subcontractors or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is: (i) to force or require subcontractors of Bechtel Power Corporation, James P. Horan, Inc., or other persons to cease using, selling, handling, transporting, or otherwise dealing in the products of Bechtel Power Corporation or James P. Horan, Inc., or to cease doing business with Bechtel Power Corporation or James P. Horan, Inc.; or (ii) to force or require Bechtel Power Corporation or James P. Horan, Inc., or other persons to cease using, selling, handling, transporting or otherwise dealing in the products of Public Service Electric & Gas Company, or to cease doing business with Public Service Electric & Gas Company.

(c) From picketing, parading, patrolling, or otherwise gathering at any places along either Alloways Creek Neck Road or the access road to the Salem Nuclear Generating Station, except at the location on the access road reserved for the exclusive use of Public Service Electric and Gas Company employees, suppliers, service contractors and visitors located approximately 2500 feet east of the main entrance designated Entrance No. 1 and there marked by a yellow line and by two orange markers (designated as point 8 on Exhibit P–1).

No costs.