**Gerald KOBELL, Regional Director for Region Six of the National Labor Relations Board for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**AMALGAMATED COUNCIL OF GREYHOUND UNIONS, AFL–CIO, and Amalgamated Transit Unions, Local 1043, AFL–CIO, Defendants.**

Civ. A. No. 90–0986.

United States District Court, W.D. Pennsylvania.

June 29, 1990.

---

Donald J. Burns, Pittsburgh, Pa., for plaintiff.

Alan Belkin, Cleveland, Ohio, Martin Burns, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

This action is brought by Gerald Kobell, Regional Director for Region 6 of the National Labor Relations Board ("Board"), pursuant to § 10(*l*) of the National Labor Relations Act, as amended, ("Act"), for a temporary injunction pending final disposition of the matters pending before the Board on charges filed by Greyhound Lines, Inc., and Greyhound Food Management, Inc., alleging that respondents engaged in and are engaging in unfair labor practices within the meaning of § 8(b)(4)(i) and (ii), Subparagraph (B) of the Act which proscribes secondary boycotts and other secondary pressure aimed at requiring an employer to cease dealing in the products of, or to cease doing business with any other employer.

The Board has petitioned this Court requesting the respondents, Amalgamated Council of Greyhound Local Unions, AFL–CIO, and Amalgamated Transit Union Local 1043, AFL–CIO, their officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with them be enjoined and restrained from picketing at the entrance to the driveway leading to the Post House Cafeteria and Gift Shop, located at Breezewood, Pennsylvania; and, that they be enjoined and restrained from, in any manner or by any means, including picketing, orders, directions, instructions, requests or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, or threatening, coercing or restraining Greyhound Food Management, Inc., and any other persons engaged in commerce or in industry affecting commerce, where in either case an object thereof is to force or require Greyhound Food Management, Inc., and other persons to cease using, selling, handling, transporting or otherwise dealing in the products of, or to cease doing business with Greyhound Lines, Inc.

On June 8, 1990, upon the filing of a Complaint and Petition for Injunction Under Section 10(*l*) of the National Labor Relations Act, as Amended, this Court issued an Order directing respondents to appear before this Court on the 13th day of June, 1990, to show cause why an injunction should not be issued enjoining and restraining respondents as set forth above.

A full and complete hearing was held on the Complaint on June 13th, 1990, at which time testimony was taken and a stipulation of the parties was entered into the record.

### Findings of Fact

(1) The petitioner is Gerald Kobell, Regional Director for Region 6 of the National Labor Relations Board, an agency of the United States, who has filed this Petition

for and on behalf of the National Labor Relations Board under § 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C., § 160(*l*).

(2) Greyhound Food Management, Inc. ("G.F.M."), is an Arizona corporation with its principal office located in Phoenix, Arizona, and engaged in the operation and/or management of a cafeteria and gift shop called the Post House located in Breezewood, Pennsylvania, at the junction of Interstate 70 and State Highway 30. Attached hereto and made a part hereof is a diagram of the area in question, which has been marked into evidence as Petitioner's Exhibit No. 1, marked Plaintiff's Exhibit No. 1, and it appears to accurately depict the physical site.

(3) Greyhound Lines, Inc., ("G.L.I.") a Texas corporation with its principal office located in Dallas, Texas, is engaged in the operation of a national bus system.

(4) At all times relevant hereto, the respondents have had a labor dispute with G.L.I. On March 2, 1990, in support of its dispute with G.L.I., the respondents established a picket line on the site of G.L.I.'s operations in Breezewood, Pennsylvania. The picket line was set up on the driveway leading to the northwest side of the Post House, 15 to 20 feet away from the entrance to the parking lot, on private property with permission of the owner of such private property. The location of the picket line is depicted on Exhibit 1 with an "X" and marked "pickets."

(5) The following legend appeared on the picket sign:

A.T.U. Local 1043, Amalgamated Council of Greyhound Local Unions, AFL–CIO, drivers, maintenance and office on strike against Greyhound Lines for unfair practices.

(6) G.F.M. leases the property on which the Post House is located, and G.L.I. subleases space from G.F.M. at this location for a maintenance garage in a building approximately 30 to 40 feet on the east side of the Post House Restaurant. In addition, G.L.I. has a written sublease with G.F.M. for a ticket agent's office located inside the Post House.

(7) G.L.I.'s ticket counter is located directly within the Post House Restaurant. There is no physical separation of the ticket office and the Post House Restaurant.

(8) The Greyhound logo appears both on the maintenance garage building and in the window of the Post House Restaurant itself at the location of the Greyhound ticket counter.

(9) Though the Post House Restaurant services 50 bus companies in addition to G.L.I., of the 20 parking bays provided for the buses, 10 of those are reserved exclusively for the use of G.L.I. buses.

(10) G.L.I. also uses the facilities at the Post House for standard scheduled operations; in other words, for picking up and discharging passengers on regular runs, as opposed to charters.

(11) The driveway on which the pickets set their line is the only means of ingress and egress to the Post House and Greyhound buses have to go to the top of the driveway to have access to their maintenance facilities, their bays or to their ticket offices.

(12) There is no separate gate for other bus companies nor for Greyhound, and no attempt was made by G.F.M. to establish another entrance for Greyhound's sole use.

(13) After March 2, 1990, many of the charter buses, including Greyhound buses, would not cross the picket lines set up by the respondents. Greyhound buses would stop at one of the other restaurants along the driveway. The pickets, however, would not go down to where the Greyhound buses were being serviced; they remained at the top of the driveway at the original location of their picket line.

(14) On March 7, 1990, the Post House Restaurant discontinued its operations.

(15) That on or about March 14, 1990, G.L.I., pursuant to provisions of the Act, filed with the Board a charge alleging that Amalgamated Council of Greyhound Local Unions, AFL–CIO, ("Council"), and Amalgamated Transit Union Local 1043, AFL–CIO, ("Local 1043") and collectively referred to as "Respondents," have engaged

in and are engaging in unfair labor practices within the meaning of Section 8(b)(4)(i) and (ii), Subparagraph (B) of the Act.

(16) That on or about March 28, 1990, G.F.M., pursuant to provisions of the Act filed with the Board charges alleging that Council and Local 1043 have engaged in and are engaging in unfair labor practices within the meaning of § 8(b)(4)(i) and (ii), Subparagraph (B) of the Act.

(17) On March 20, 1990, G.L.I. notified the respondents that G.L.I. had decided to suspend all of its business operations at the Breezewood location. G.L.I.'s notice specifically stated that the suspension of G.L. I.'s Breezewood operations would be "for the duration of the strike."

(18) On April 10, 1990, the respondents received a telegram from G.F.M. which stated that in its opinion picketing by the respondents at the entrance to the property utilized by G.L.I. and G.F.M. was secondary activity. G.F.M. invited the respondents to move their picket line to the maintenance building in the back of the premises. Respondents declined.

(19) Though G.F.M. had ceased operations at the Breezewood location and G.L.I. had stated it would no longer stop at the Breezewood location, on the evening of May 15, 1990, a Greyhound bus discharged a passenger in the parking lot of the Post House Restaurant.

### Conclusions of Law

(1) Respondent Council and respondent Local 1043 are labor organizations within the meaning of §§ 2(5), 8(b) and 10($l$) of the National Labor Relations Act, and their duly authorized officers or agents are engaged in promoting or protecting the interests of employee members within the jurisdiction of this Court.

(2) Greyhound Food Management, Inc., and Greyhound Lines, Inc., are engaged in commerce or in industries affecting commerce.

(3) Pursuant to § 10($l$) of the Act, if the Board finds there is reasonable cause to believe unfair labor practices within the meaning of § 8(b)(4)(i) and (ii)(B) of the Act

are taking place, the Board must seek interim injunctive relief from the District Court.

(4) The § 10($l$) proceeding is ancillary to the exclusive jurisdiction of the Board with regard to the unfair labor practice committed, therefore, the Board faces a relatively insubstantial burden of proof. *Hirsch v. Building and Construction Trades Council,* 530 F.2d 298 (3d Cir.1976).

(5) The Regional Director need not prove that a violation of the Act has in fact occurred, nor must he convince the Court of the legal theory upon which he proceeds. The Director's burden is to demonstrate that reasonable cause exists to believe that the elements of an unfair labor practice are present, and that the Director's legal theory is substantial and not frivolous. *Hirsch, supra.*

(6) Though the Board is confronted by a light burden of proof, it must demonstrate some evidentiary basis for believing that a violation of § 8(b)(4) has occurred.

(7) No competent evidence has been presented that would indicate that the objective of the picketing was to induce a secondary boycott.

(8) In *Sailors Union of the Pacific (Moore Dry Dock),* 92 N.L.R.B. 547 (1950), the Board established standards to aid in determining whether picketing at a common site is primary or secondary. A common situs picketing may be primary if it: (a) is limited to times when primary employer is present at the common site; (b) is limited to places reasonably close to the location of the primary employer's work; and (c) discloses clearly that the dispute is with the primary employer.

(9) The respondent's picket line was established at the only means of ingress and egress into the shared facility.

(10) Though G.L.I. indicated it had ceased operations at the facility, G.L.I. has continued to use such facility and a Greyhound bus discharged a passenger on May 15, 1990, in the Post House Restaurant parking lot.

(11) Had G.L.I. completely abandoned the facility as it had claimed, under the

decision of the United States Supreme Court in *Local 761, International Union of Electrical, Radio and Machine Workers AFL–CIO vs. National Labor Relations Board,* 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961), G.L.I. may not bar the respondents from publicizing its cause by removing all its employees from the situs.

(12) The signs displayed by the picketers made reference only to their dispute with G.L.I. and made no mention of G.F.M.

(13) The wording of the picket signs, however, is not determinative of the lawfulness of the conduct; the test is not the text of the signs, but the objective of the picketing. *K & K Construction Company, Inc., vs. National Labor Relations Board,* 592 F.2d 1228 (3d Cir.1979).

(14) There has not been a modicum of evidence presented that would indicate a "bad" objective of respondents.

(15) Respondents have a right to seek to publicize their dispute and to ask people not to patronize G.L.I. There has been no evidence presented that Respondents have engaged in coercive, threatening or intimidating conduct.

An appropriate Order denying the request of the plaintiff for a temporary injunction shall be entered.