**Gerald KOBELL, Regional Director for Region 6 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**AMALGAMATED COUNCIL OF GREYHOUND UNIONS, AFL–CIO, and Amalgamated Transit Union, Local 1043, AFL–CIO, Defendants.**

**Civ. A. No. 90–174J.**

United States District Court,
W.D. Pennsylvania.

Nov. 26, 1990.

Gerald Kobell, Pittsburgh, Pa., for plaintiff.

Alan Belkin, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

This action is brought by Gerald Kobell, Regional Director for Region 6 of the National Labor Relations Board ("Board"), pursuant to § 10(*l*) of the National Labor Relations Act, as amended, ("Act"), for a temporary injunction pending final disposi-

tion of the matters pending before the Board on charges filed by Greyhound Lines, Inc., and Greyhound Food Management, Inc., alleging that respondents engaged in and are engaging in unfair labor practices within the meaning of § 8(b)(4)(i) and (ii), Subparagraph (B) of the Act which proscribes secondary boycotts and other secondary pressure aimed at requiring an employer to cease dealing in the products of, or to cease doing business with any other employer.

The Board has petitioned this Court requesting the respondents, Amalgamated Council of Greyhound Local Unions, AFL–CIO, and Amalgamated Transit Union Local 1043, AFL–CIO, their officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with them be enjoined and restrained from picketing at the entrance to the driveway leading to the Post House Cafeteria and Gift Shop, located at Breezewood, Pennsylvania; and, that they be enjoined and restrained from, in any manner or by any means, including picketing, orders, directions, instructions, requests or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, or threatening, coercing or restraining Greyhound Food Management, Inc., and any other persons engaged in commerce or in industry affecting commerce, where in either case an object thereof is to force or require Greyhound Food Management, Inc., and other persons to cease using, selling, handling, transporting or otherwise dealing in the products of, or to cease doing business with Greyhound Lines, Inc.

On September 13, 1990, upon the filing of a Complaint and Petition for Injunction Under Section 10(*l*) of the National Labor Relations Act, As Amended, this Court issued an Order directing respondents to appear before this Court on the 20th day of September, 1990, to show cause why an injunction should not be issued enjoining and restraining respondents as set forth above.

A full and complete hearing was held on the Complaint on the 20th day of September, 1990, at which time testimony was taken and a stipulation of the parties was entered into the record.

### Findings of Fact

(1) The Findings of Fact of this Court, as set forth in the Memorandum Opinion dated the 28th day of June, 1990 and issued in Civil Action No. 90–0986, 742 F.Supp. 266, are hereby adopted and incorporated herein and attached hereto.

(2) The respondents have continued to maintain the picket line on the site of Greyhound Line Inc.'s (GLI) pre-strike operations in Breezewood, Pennsylvania. There has been no change in the number of pickets, the location of the pickets or the activities of the pickets since the prior hearing in this Court on June 13, 1990.

(3) The legend on the picket signs has not been changed, and reads as follows:

A.T.U. Local 1043, Amalgamated Council of Greyhound Local Unions, AFL–CIO, drivers, maintenance and office on strike against Greyhound Lines for unfair practices.

(4) On July 2, 1990, Greyhound Food Management, Inc. (GFM) attempted to re-open the Post House Restaurant (Post House), which had been closed since March 7, 1990, five days after the respondents had set up their picket line.

(5) Though customers were advised of the re-opening, no customers visited the Post House on July 2, 1990.

(6) The Post House has not attempted to open for business since July 2, 1990.

(7) On August 13, 1990, the subleases between GFM and GLI covering the maintenance facility and ticket agency space located at the Post House in Breezewood,

Pennsylvania, were rejected by order of the United States Bankruptcy Court for the Southern District of Texas pursuant to § 365(d) of the Bankruptcy Code.

(8) On August 9, 1990, GFM requested GLI's Charter Division to instruct its drivers to discontinue using the Post House as a meal and rest stop.

(9) On or about August 9, 1990, all GLI insignia was removed from the Post House premises and GFM caused to be posted on the premises notices which state as follows:

Notice, Greyhound Lines Inc., its employees, customers and suppliers may not use or have access to these premises.

(10) On August 13, 1990, GFM notified respondents, by certified letter, that the subleases with GLI had been abrogated and that GLI was not permitted on the Post House premises. The letter also stated that the picketing by the respondents at the entrance to the property utilized was a violation of § 8(b)(4)(B) of the Act and should therefore be removed immediately. Respondents did not remove their pickets.

(11) All GLI property was removed from the maintenance building and the ticket booth. The equipment was hauled away in Greyhound buses.

(12) The locks on both the maintenance building and the ticket have been changed, and the Post House manager has the only keys.

(13) On or about August 21, 1990, GFM, pursuant to provisions of the Act, filed with the Board a charge alleging that Amalgamated Council of Greyhound Local Unions, AFL–CIO, ("Council"), and Amalgamated Transit Union Local 1043, AFL–CIO, ("Local 1043") and collectively referred to as "Respondents," have engaged in and are engaging in unfair labor practices within the meaning of Section 8(b)(4)(i) and (ii), Subparagraph (B) of the Act.

(14) On or about September 13, 1990, a Greyhound bus was observed entering the Post House parking lot, driving around the Post House, returning down the driveway and entering the Arby's Restaurant.

*Conclusions of Law*

(1) Respondent Council and respondent Local 1043 are labor organizations within the meaning of §§ 2(5), 8(b) and 10(*l*) of the National Labor Relations Act, and their duly authorized officers or agents are engaged in promoting or protecting the interests of employee members within the jurisdiction of this Court.

(2) Greyhound Food Management, Inc., and Greyhound Lines, Inc., are engaged in commerce or in industries affecting commerce.

(3) Pursuant to § 10(*l*) of the Act, if the Board finds there is reasonable cause to believe unfair labor practices within the meaning of § 8(b)(4)(i) and (ii)(B) of the Act are taking place, the Board must seek interim injunctive relief from the District Court.

(4) The § 10(*l*) proceeding is ancillary to the exclusive jurisdiction of the Board with regard to the unfair labor practice committed, therefore, the Board faces a relatively insubstantial burden of proof. *Hirsch v. Building and Construction Trades Council*, 530 F.2d 298 (3d Cir.1976).

(5) In reviewing a petition for injunction under § 10(*l*) of the Act, the court is not called upon to decide the merits of the unfair labor practice case, or whether in fact violations have occurred. *Schauffler v. Local 1291, International Longshoremen's Association*, 292 F.2d 182, 186, n. 4 (3rd Cir.1961); *Hirsch v. System Council U–2, IBEW, AFL–CIO*, 541 F.Supp. 224, 228 (D.C.N.J.1982).

(6) The determination of such questions, both as to factual and legal issues, is reserved exclusively for the National Labor Relations Board (NLRB), subject to review by the Court of Appeals pursuant to Sections 10(e) and 10(f) of the Act. *NLRB v. Denver Building & Const. Trades Council*, 341 U.S. 675, 681–83, 71 S.Ct. 943, 947–48, 95 L.Ed. 1284 (1951).

(7) The Regional Director need not prove that a violation of the Act has in fact occurred, nor must he convince the Court of the legal theory upon which he proceeds. The Director's burden is to demonstrate

that reasonable cause exists to believe that the elements of an unfair labor practice are present, and that the Director's legal theory is substantial and not frivolous. *Hirsch v. Building and Construction Trades Council*, 530 F.2d 298, 302–03 (3d Cir. 1976); *Samoff v. Bldg. & Const. Trades Council*, 475 F.2d 203, 207 (3rd Cir.1973); *Schauffler v. Local 1291, International Longshoremen's Association*, 292 F.2d 182, 187, 189 (3rd Cir.1961).

(8) Though the Board is confronted by a light burden of proof, it must demonstrate some evidentiary basis for believing that a violation of § 8(b)(4) has occurred.

(9) Picketing at a common situs, a site on which two or more employers are engaged in normal operations, is presumptively valid absent persuasive evidence of an illegal object if the picketing conforms to the standards contained in *Sailor's Union of the Pacific (Moore Dry Dock Co.)*, 92 N.L.R.B. 547 (1950).

(10) Because, GLI's subleases for the maintenance facility and ticket office have been terminated, all GLI insignias have been removed, and because GFM has taken possession of the maintenance facility and ticket office, it can be reasonably concluded that GLI is not maintaining a presence at the Post House site, and is no longer engaged in normal business operations at the situs.

(11) Though respondents argue that the circumstances of the picketing have not changed from the date of this Court's Memorandum Opinion on June June 28, 1990 when we found:

> There has not been a modicum of evidence presented that would indicate a "bad" objective of respondents. (Conclusion of Law No. 14),

we find that respondents' continued picketing at a site where the primary employer is no longer engaged in customary and normal operations of business is in itself evidence that the object of the respondent's picketing is to unlawfully enmesh GFM in their labor dispute with GLI.

(12) Respondents submit that to grant the injunctive relief requested, they will be effectively denied their right to strike against GLI in Breezewood and to publicize their disputes with GLI. The inability to reach the public as a result of a lawful limitation on picketing activities has been held to be too insubstantial a factor to outweigh the need to prevent unlawful picketing. *N.L.R.B. v. Int. Brotherhood of Elec. Workers, AFL–CIO, Local 903 ("Hinton Commercial Contractors")*, 574 F.2d 1302 (5th Cir.1978).

(13) It has been held that a union's interest in publicizing its disputes with employers by picketing, even when that interest is protected by statute, does not entitle such union to exert economic pressure in an illegal manner or for an illegal purpose. *Hirsch v. Building & Construction Trades Council, supra*, 530 F.2d at 304.

(14) In keeping with the Congressional policy "to restrict the area of industrial conflict"[1] and unable to find the Board's theory to be insubstantial and frivolous, this Court is compelled to issue the interim injunctive relief sought by the Board.

An appropriate Order granting the request of the petitioner for a temporary injunction shall be entered.

## ORDER OF COURT

AND NOW, to-wit, this 26th day of November, 1990, after hearing in the above matter,

IT IS ORDERED that pending the final disposition of the matters involved herein pending before the National Labor Relations Board, Respondents, Amalgamated Council of Greyhound Local Unions, AFL–CIO, and Amalgamated Transit Union Local 1043, AFL–CIO, their officers, repre-

---

1. In *Local 1976 Carpenters (Sand Door and Plywood Co.) v. N.L.R.B.*, 357 U.S. 93, 100, 78 S.Ct. 1011, 1016–17, 2 L.Ed.2d 1186 (1958) the Supreme Court stated that Congress' purpose in enacting the amendments to the Taft–Hartley Act was "to restrict the area of industrial conflict insofar as this could be achieved by prohibiting the most obvious widespread and, as Congress evidently judged, dangerous practice of unions to widen that conflict; the coercion of neutral employers, themselves not concerned with the primary labor dispute, …"

sentatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be, and they hereby are, enjoined and restrained from:

(1) Continuing their current picketing at the entrance to the driveway leading to the Post House Cafeteria and Gift Shop, located in Breezewood Pennsylvania; and

(2) In any manner or by any means, including picketing, orders, directions, instructions, requests or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities, or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Greyhound Food Management, Inc., and any other persons engaged in commerce or an industry affecting commerce, where in either case an object thereof is to force or require Greyhound Food Management, Inc., and other persons, to cease using, selling, handling, transporting or otherwise dealing in the products of, or to cease doing business with Greyhound Lines, Inc.